**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

v.

TERRELL LAMONT BYNUM, a/k/a Boo,
a/k/a Boo-Man; SUMEKA PLUMMER;
IRIS JOHNSON,
  *Defendants-Appellees.*

No. 00-4773

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CR-00-197)

Argued: October 31, 2001

Decided: June 14, 2002

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Reversed by published opinion. Judge Motz wrote the majority opinion, in which Judge King joined. Judge King wrote a separate concurring opinion. Judge Michael wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Brian Ronald Hood, Assistant United States Attorney, Richmond, Virginia, for Appellant. Reginald Moore Barley, Richmond, Virginia, for Appellee Johnson; JeRoyd Wiley Greene, III, ROBINSON & GREENE, Richmond, Virginia, for Appellee Bynum;

Susan Ann Kessler, WHITE, BLACKBURN & CONTE, P.C., Richmond, Virginia, for Appellee Plummer. **ON BRIEF:** Helen F. Fahey, United States Attorney, Richmond, Virginia, for Appellant.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

The Government appeals the district court's order suppressing certain physical evidence seized pursuant to a search warrant. Finding that the good faith exception adopted by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), renders this evidence admissible even if the search warrant lacked probable cause, we reverse.

### I.

On February 10, 2000, Richmond Police Department Detective John O'Connor received information from a confidential informant that a black male known as "Boo-Man" possessed a large quantity of heroin and was dealing heroin in the end apartment (next to that of a Sequell Sedrick) on Walcott Place, in Richmond, Virginia. The informant advised O'Connor that "Boo-Man" had "quite a bit of heroin, that he had some in his crotch, [and] that he kept it in his Cadillac." The informant "described the Cadillac," and related that Boo-Man "made trips . . . out of the area frequently, back and forth to the apartment delivering drugs." The informant further told Detective O'Connor that Boo-Man and his group were "beefing with another group . . . over a dispute at a dance hall."

Later that evening, Detective O'Connor applied for a warrant, making an affidavit as to these facts and further stating that for the previous eight years this confidential informant had provided the Richmond Police Department with accurate information, which law enforcement officers had corroborated through "DMV, and Criminal History Checks, Search warrants and arrests," and that the information had led to the "seizure of large quantities of drugs, and guns" and several convictions. On the basis of this affidavit, a state magistrate issued a search warrant for the apartment at 2234 Walcott Place.

Detective O'Connor and other police officers conducted the search for several hours, beginning at 10:40 p.m. on February 10. The search yielded 196 gross grams of heroin, some marijuana, drug paraphernalia, a scale, bullets, and $10,750 in cash. The lessee of the apartment, Iris Johnson, was absent during the search, but two other residents of the apartment, Sumeka Plummer and Terrell Bynum (who the police learned was Boo-Man), were present. However, the police arrested no one that evening.

On May 25, 2000, Drug Enforcement Administration (DEA) agent Kenneth Peterson sought another warrant to search 2234 Walcott Place. The affidavit, after two generic paragraphs identifying Agent Peterson as a DEA task force officer with training and experience in narcotics investigations, stated in relevant part:

3.  This affidavit is made in support of a SEARCH WARRANT for the residence of Terrell BYNUM, located at 2234 Walcott Place, Richmond, VA. This location has been utilized by BYNUM in furtherance of drug trafficking crimes and is within the Eastern District of Virginia and the jurisdiction of the Court.

4.  BYNUM is described by the Virginia Department of Motor Vehicles as a male with a date of birth of 01/01/79 and social security number 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. BYNUM has a criminal record in Virginia and is a convicted felon.

5.  Information and intelligence provided in this investigation by a Confidential Source (CS) has been proven reliable and information provided to law enforcement has been verified. The CS has identified BYNUM as a large quantity dealer of heroin.

6.  On February 10, 2000, a search warrant conducted at 2234 Walcott Place, Richmond, VA by DEA and the Richmond Police Department resulted in the seizure of approximately 196 gross grams of heroin. $10,750 in U.S. Currency was also seized from within the resi-

dence. Additionally, a digital scale, razor blade and packaging material were seized from the residence.

7.  Within the past 72 hours, the CS has observed a large quantity of heroin within the residence at 2234 Walcott Place, Richmond, VA. The CS observed BYNUM packaging heroin for distribution and delivering a portion of the narcotics to three associates. A substantial amount of heroin remained within the residence after the delivery.

An Assistant United States Attorney reviewed and signed the affidavit, his signature indicating his approval of it. On the basis of this affidavit, a United States Magistrate Judge issued a search warrant. Government agents, including Agent Peterson, executed a search pursuant to the warrant on the evening of May 25, 2000. This search yielded a small amount of marijuana, a loaded .40 caliber Beretta semi-automatic pistol, and unspent .380 caliber and 9mm caliber ammunition. Brief of Appellant at 7.

Shortly thereafter, a grand jury indicted Bynum, Plummer, and Johnson for multiple drug and firearm offenses. Bynum, Plummer, and Johnson moved to suppress the physical evidence that law enforcement authorities had seized pursuant to the February and May search warrants. The district court issued an order denying the suppression motion with respect to the February warrant, but granting it as to the May warrant. *United States v. Bynum*, 125 F. Supp. 2d 772 (E.D. Va. 2000). The Government appeals the latter ruling; Bynum, Plummer, and Johnson do not cross appeal. Accordingly, the sole issue presented to us is whether the district court erred in suppressing evidence obtained pursuant to the May search warrant.

II.

In granting the motion to suppress on the basis of the Fourth Amendment exclusionary rule, the district court found (1) that no probable cause supported the warrant and (2) that the *Leon* good faith exception did not "save[ ] the yield of the May 25 search from suppression." *Id*. at 797-99. The Government contends that the court erred with respect to both rulings. Assuming without deciding that no

probable cause supported the warrant, we will proceed "immediately to a consideration of the officers' good faith." *Leon*, 468 U.S. at 925 (recognizing the appropriateness of such an approach in some cases); *accord United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994).

*Leon* teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a "subsequently invalidated" warrant, unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. The Court explained that an officer could not be found to have acted with "objective reasonableness," excluding application of this "good faith exception," in any of the following circumstances:

(1) "the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";

(2) the magistrate acted as a rubber stamp for the officers and so "wholly abandoned" his detached and neutral "judicial role";

(3) "an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or

(4) "a warrant [is] so facially deficient — *i.e.*, in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid."

*Id*. at 923 (internal quotation marks omitted).

In holding that the third circumstance described by the *Leon* Court barred application of the good faith exception in this case, the district court misidentified when this circumstance occurs. Thus, the court stated that "[t]he good faith exception . . . does not apply" when the affidavit fails to provide "a substantial basis for determining the exis-

tence of probable cause." *Bynum*, 125 F. Supp. 2d at 797. "Substantial basis" provides the measure for determination of whether probable cause exists in the first instance. *See United States v. Harris*, 403 U.S. 573, 581 (1971). If a lack of a substantial basis also prevented application of the *Leon* objective good faith exception, the exception would be devoid of substance. In fact, *Leon* states that the third circumstance prevents a finding of objective good faith only when an officer's affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted). This is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place.

With the correct standard in mind, we believe it is clear that even if Agent Peterson's affidavit does not provide a substantial basis for determining the existence of probable cause, *see Illinois v. Gates*, 462 U.S. 213, 238 (1983) (requiring a magistrate judge assessing probable cause for the issuance of a search warrant to determine "whether given all the circumstances set forth in the affidavit[,] . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place" (citations omitted)), it is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted).

In his affidavit, Agent Peterson (1) recited that Bynum resided at the apartment that he sought to search and had used the apartment in drug trafficking crimes, (2) stated Bynum's birth date and social security number, (3) identified Bynum as a convicted felon with a criminal record in Virginia, (4) explained that a February 10 search of the same apartment had yielded 196 grams of heroin, drug paraphernalia and $10,750 in cash, and (5) related that a confidential informant who had "proven reliable" and whose information "ha[d] been verified," provided "[i]nformation and intelligence . . . in this investigation," including identification of Bynum as a "large quantity heroin dealer" and observation that "[w]ithin the past 72 hours" Bynum had possessed "a large quantity of heroin" in the apartment.

Although in his affidavit, Agent Peterson did not expressly inform the magistrate judge that the confidential source was the same source

who provided information for the February 10 search, from the affidavit the magistrate judge could reasonably have inferred a link between the confidential source and the February search. Paragraphs 3 and 4 of the affidavit establish that the warrant is requested to search 2234 Walcott Place, the residence of Terrell Bynum, a convicted felon, who has been using his home to traffic in illegal drugs. In paragraph 5 the affidavit states that a confidential source "in this investigation" has supplied reliable information to law enforcement officers, which "has been verified." The affidavit then proceeds chronologically to detail, in the remainder of paragraph 5, what information the informant previously has provided during the investigation, i.e., that Bynum is "a large quantity dealer of heroin," and then, in paragraph 6, how law enforcement has verified that information, i.e., by recovering 196 gross grams of heroin from the same site — 2234 Walcott Place — in the February search. The magistrate judge could, therefore, reasonably infer from reading paragraphs 5 and 6 seriatim, and in conjunction, that they are to be linked — to establish the veracity and reliability of the informant.

The district court, however, noting the absence of any explicit link or any other specific information as to the confidential source's prior proved reliability, found that the *Leon* good faith exception did not "save[ ] the yield of the May 25 search from suppression." *Bynum*, 125 F. Supp. 2d at 797. The court reasoned that the affidavit contained only "conclusory averments" of "three month old information" based on "the bare bones statement of an informant whose provenance was not in an affidavit which contained no underlying facts about the basis for the informant's information" and so "[t]o apply the good faith exception here would allow the exception to swallow . . . the exclusionary rule." *Bynum*, 125 F. Supp. 2d at 799. In so holding, the district court relied heavily on *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996), where we held that the good faith *Leon* exception did not apply, and asserted that "[t]he affidavit here is less substantial than the one described in *Wilhelm* to be 'bare bones' and thus deficient." *Id*. at 798. We disagree; we believe that, in fact, the substantial differences between the facts in *Wilhelm* and those in the case at hand conclusively demonstrate why the *Leon* exception does apply here.

In *Wilhelm*, after receiving an anonymous telephone tip that an informant had seen marijuana being sold in the defendant's home

within the past 48 hours, an officer applied for a search warrant. *Wilhelm*, 80 F.3d at 117-18. The officer did not meet the informant before or after receiving the tip and did not know the informant. *Id.* at 118. In support of the warrant, the officer described the informant as a "concerned citizen" and a "mature person with personal connections with the suspects [who] has projected a truthfull [sic] demeanor to this applicant." *Id.* The officer's only corroborating information was that she had confirmed directions to the residence and that the description of the marijuana and of the sale transactions was consistent with her knowledge of marijuana packaging and sales. *Id.* We held that the *Leon* good faith exception did not apply because the officer "could not reasonably rely on an unknown, unavailable informant without significant corroboration," *id.* at 123, and the magistrate thus acted only as a "rubber stamp" in approving a "bare bones" affidavit. *Id.* at 121. We further noted that "[w]hile perhaps not undertaken with deliberate bad faith, [the officer]'s use of phrases such as 'concerned citizen,' 'mature' and 'truthful demeanor'" struck us "as attempts to endue the affidavit with the appearance of genuine substance." *Id.* at 123; *cf. United States v. Baxter*, 889 F.2d 731, 733-34 (6th Cir. 1989) (refusing to apply good faith exception to "bare bones" affidavit in which officer misrepresented "anonymous" informant as "confidential" informant).

Here, unlike *Wilhelm*, the officer relied not on an unknown informant but one whom he knew and who had provided reliable information in the past that law enforcement officers had "verified." The Supreme Court has repeatedly recognized that a proven, reliable informant is entitled to far more credence than an unknown, anonymous tipster. *See, e.g.*, *Florida v. J.L.*, 529 U.S. 266, 270 (2000); *Adams v. Williams*, 407 U.S. 143, 146-147 (1972). Although certainly it would have been preferable if Agent Peterson had expressly stated in his affidavit the basis for his statement as to his informant's reliability, he did at least swear to the magistrate that he was relying on a known and proven confidential source, not a never-known, never-verified tipster as in *Wilhelm*. *See Wilhelm*, 80 F.3d at 120 (noting that "[u]pholding this warrant would ratify police use of an unknown, unproven informant — with little or no corroboration"). Thus, Agent Peterson's affidavit does not send up the same sort of red flags as did that in *Wilhelm*. *Cf. United States v. Blackwood*, 913 F.2d 139 (4th Cir. 1990) (approving as providing probable cause affiant's use of

unnamed "reliable and confidential informant" who had previously provided "true and accurate information" to purchase cocaine).

Moreover, as noted above, in the case at hand the magistrate judge reasonably could have inferred from the affidavit that law enforcement officers had verified prior information obtained from this same confidential source by a fruitful search of the same search site (Bynum's residence) just three and a half months earlier. The Supreme Court has expressly recognized that affidavits in support of search warrants should not be subject to "[t]echnical requirements of elaborate specificity," and that a magistrate has the "authority . . . to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant." *Gates*, 462 U.S. at 235, 240.

Furthermore, the affidavit provided explicit corroboration of possible illegal drug activity at the search site, which far exceeds that in the affidavit at issue in *Wilhelm*. Critically, Agent Peterson's affidavit stated that Bynum was a convicted felon with a criminal record in Virginia, who resided at the proposed search site, a site where officers had seized a large amount of heroin and United States currency less than four months earlier. An officer's report in his affidavit of "the target's prior criminal activity or record is clearly material to the probable cause determination," *United States v. Taylor*, 985 F.2d 3, 6 (1st Cir. 1993) (citation omitted), *see also United States v. Sumpter*, 669 F.2d 1215, 1222 (8th Cir. 1982) ("[A]n individual's prior criminal activities and record [cited in a search warrant application] have a bearing on the probable cause determination."), and law enforcement "reports" as to a defendant's "previous drug smuggling activities" can corroborate a confidential informant's "veracity." *United States v. Foree*, 43 F.3d 1572, 1576 (11th Cir. 1995); *see also United States v. Miller*, 925 F.2d 695, 699-700 (4th Cir. 1991) (holding informant's tip corroborated, in part, because the officer "knew that [the defendant] had been involved in illegal narcotics in the past" based on his prior arrest of defendant for cocaine possession approximately one year earlier). In contrast, the only corroboration offered by the affiant in *Wilhelm* to bolster the anonymous tipster's information was accurate directions to the defendant's house, which, as we noted, were available to "[a]lmost anyone," *Wilhelm*, 80 F.3d at 121, and which did not reveal anything about the defendant's criminal activities.

Nor, again unlike *Wilhelm*, is there an indication in this case of any sort of bad faith by the officer who prepared the affidavit. The affiant in *Wilhelm* craftily choose his words in an attempt to clothe a totally anonymous source with "genuine substance." *Id.* at 123. In contrast, as the district court recognized, "[t]here is nothing here to suggest that" Agent Peterson in any way "was dishonest." J.A. at 361 (Transcript of Suppression Hearing at 331). *Cf. Leon*, 468 U.S. at 926 (good faith exception not applicable if "the officers were dishonest"). On the contrary, that Agent Peterson consulted with the prosecutor prior to applying for the search warrant provides additional evidence of his objective good faith, like the law enforcement officer in *Leon*, 468 U.S. at 902, and unlike the officer in *Wilhelm*. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989 (1984); *United States v. George*, 971 F.2d 1113, 1124 (4th Cir. 1992). Given all of these circumstances, we are satisfied that Agent Peterson's "reliance on the magistrate's determination of probable cause was objectively reasonable." *Leon*, 468 U.S. at 926.

In reaching its contrary conclusion, the district court may have found relevant Agent Peterson's failure to state expressly in his affidavit that the confidential informant on whom he relied had also provided the information for the fruitful February search of the same apartment. *See Bynum*, 125 F. Supp. 2d at 793-97. The Government argued and the district court seemed to accept that Agent Peterson knew when he applied for the warrant that he "was using information from the same informant" who had "produced information in the past which led to the successful search on February 10th." J.A. 354 (Transcript of Suppression Hearing at 326). The district court also seemed to accept that if this linkage had been set forth in Agent Peterson's affidavit, it would have been sufficient to establish probable cause. *See Bynum*, 125 F. Supp. 2d at 793-97. But, of course, as noted above, Agent Peterson's affidavit did not expressly include this information.

If the district court relied on the absence of this information in refusing to apply *Leon*'s good faith exception, that reliance was error. When, as here, the affidavit itself provides information not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon*, 468 U.S. at 923, a court should not refuse to apply the *Leon* good faith exception just because the officer fails to include in that affidavit all of the information known

to him *supporting* a finding of probable cause. *Cf. Leon*, 468 U.S. at 923 (holding that good faith exception does not apply when "magistrate was *misled* by . . . information that the affiant knew was false or would have known was false except for his reckless disregard of the truth") (emphasis added)); *United States v. Vigeant*, 176 F.3d 565, 573 (1st Cir. 1999) (holding *Leon* good faith exception inapplicable when affiant recklessly omitted numerous material facts undermining affidavit's persuasiveness, including indicia of confidential informant's unreliability); *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) (holding that *Leon* good faith exception "does not protect searches by officers who fail to provide all potentially adverse information to the issuing judge, and for that reason, it does not apply here").

This is not to say that absent an affidavit with the required "indicia of probable cause," *Leon*, 468 U.S. at 923, we would conclude that additional facts, which the government proved were known to the affiant police officer, but not revealed to the magistrate prior to issuance of the search warrant, could be considered in the *Leon* analysis. Courts have divided on this question. *Compare United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) (holding when affidavit itself is totally lacking in indicia of probable cause, the *Leon* good faith reliance inquiry does not extend to facts known to officers but not included in affidavit); *State v. Klosterman*, 683 N.E.2d 100, 103-05 (Ohio Ct. App. 1996) (same); *and Jones v. Commonwealth*, 472 S.E.2d 649, 653-55 (Va. Ct. App. 1996) (same), *with United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (holding that when assessing good faith under *Leon* a court looks at the "totality of the circumstances" including information demonstrating probable cause known to the affiant, but not included in his affidavit (internal quotation marks and citation omitted)); *United States v. Taxacher*, 902 F.2d 867, 871-73 (11th Cir. 1990) (same); *United States v. Word*, No. IP 99-106-CR, 2000 WL 724041, at *13-*15 (S.D. Ind. May 31, 2000), *aff'd*, No. 00-2688, 2001 WL 13133 (7th Cir. Jan. 2, 2001) (same); *and State v. Edmonson*, 598 N.W.2d 450, 460-62 (Neb. 1999) (same).

Our dissenting colleague, Judge Michael, makes a persuasive case that such information should not be considered in determining whether the officer displayed the objective reasonableness described in *Leon*. To so hold would certainly seem, as Judge Michael well

explains, to undercut Fourth Amendment protections, and be at odds with the very purpose of the *Leon* good faith exception. On the other hand, to refuse to consider such information in making the *Leon* inquiry creates an anomaly. Even though *Leon* itself renders admissible evidence obtained pursuant to a warrant supported by an affidavit that lacks probable cause, Judge Michael's interpretation of *Leon* would bar admission of evidence obtained pursuant to a warrant supported by the affidavit of an officer, who, in fact, possesses probable cause, but inadvertently omits some information from his affidavit.

Today, we need not resolve this difficult question. Wholly apart from the information known to Agent Peterson but not included in his affidavit, that affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable. Accordingly, we hold that the *Leon* good faith exception applies and the district court should not have suppressed the evidence obtained during the May 25, 2000 search.

III.

For these reasons, the judgment of the district court is

*REVERSED.*

KING, Circuit Judge, concurring:

I am pleased to concur in Judge Motz's excellent analysis and application of the good faith exception enumerated by the Supreme Court in *United States v. Leon*. I write separately, however, because I believe this search warrant to be properly supported and to have been properly issued.

First of all, we must recognize that Agent Peterson and his colleagues did most everything right. They assessed their evidence; they prepared their affidavit and paperwork for the search warrant application; they took their information and papers to an Assistant United States Attorney for review and critique; they obtained the approval of the prosecutor for what they were about to do; they placed their affidavit before the sitting United States Magistrate Judge in Richmond

for an independent judicial assessment; they obtained the duly issued search warrant from the Magistrate Judge; and then, as Judge Motz properly concludes, they executed the warrant in good faith. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989 (1984) ("The officers in this case took every step that could reasonably be expected of them."). Accordingly, as Judge Motz says, Agent Peterson and the officers executing the warrant were fully entitled to rely on its validity.

Turning to the sufficiency of the warrant, we must look to the totality of the circumstances to assess whether a search warrant affidavit supports a finding of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Gillenwaters*, 890 F.2d 679, 682 (4th Cir. 1989). In this instance, the search warrant was issued by a capable and experienced Magistrate Judge, and even if doubt existed, we should find it to be valid. *United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir. 1986) ("In doubtful cases, preference should be given to the validity of the warrant."). Under the applicable principles, the Magistrate Judge need only possess a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236 (citation and quotation omitted). And we have consistently held that we owe great deference to the magistrate's assessment of the facts in making a determination of probable cause. *See, e.g.*, *United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1994) (citing, inter alia, *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990)). In fact, to establish probable cause, the information presented to the magistrate "need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." *Williams*, 974 F.2d at 481 (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)).

I fully agree with Judge Motz that this case presents an entirely different factual situation from that in *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996). As she properly posits, "a proven, reliable informant is entitled to far more credence than an unknown, anonymous tipster," *ante* at 8, and "the affidavit provided explicit corroboration . . . far exceed[ing] that in the affidavit at issue in *Wilhelm*." *Ante* at 9. The Magistrate Judge, based on Agent Peterson's affidavit, possessed a substantial basis for concluding that the search of Bynum's residence in Richmond would uncover evidence of drug trafficking.*

---

*The affidavit of Agent Peterson, dated May 25, 2000, gave the Magistrate Judge the following pertinent information: (1) Bynum lived at

In assessing the issue of probable cause, he had before him several pertinent facts weighing in its favor: (1) this was a known and reliable confidential source; (2) Bynum was a felon and a drug dealer, who had three months earlier used this very residence in furtherance of his drug trafficking crimes; (3) a search of this residence three months earlier had uncovered illegal narcotics; (4) a large quantity of heroin was observed by the source being packaged and sold no more than three days earlier; and (5) Bynum controlled the premises to be searched. While the veracity, reliability and basis of knowledge of a confidential source are relevant, they are "simply factors to be considered" in examining the circumstances and in considering "the total information available." *United States v. Miller*, 925 F.2d 695, 699 (4th Cir. 1991) (discussing existence of probable cause to arrest).

In sum, Agent Peterson's affidavit, as presented to the Magistrate Judge, contained substantial and pertinent information from which probable cause could be found. When evaluated in context — in the totality of the circumstances — this affidavit made a compelling case that there was drug activity afoot in the Richmond residence of a known drug trafficker.

Because I believe this warrant to have been validly issued, I would find it unnecessary to reach the good faith issue. All that said, I am pleased to concur with Judge Motz on that point.

MICHAEL, Circuit Judge, dissenting:

The majority assumes without deciding that Agent Peterson's affidavit failed to establish probable cause for the May 25, 2000, search of an apartment at 2234 Walcott Place in Richmond. The majority

---

(and thus controlled) the premises to be searched; (2) Bynum had previously used the residence in furtherance of drug trafficking crimes; (3) Bynum was a convicted felon; (4) a prior search on February 10, 2000, yielded massive evidence of drug crimes; (5) a confidential source, proven reliable in the past, identified Bynum as a heroin dealer; and (6) within the previous 72 hours, the source had observed a large quantity of heroin inside Bynum's residence, and he had observed Bynum packaging and delivering some of the drugs.

then holds that the evidence from that search can nonetheless be admitted under the good faith exception established by *United States v. Leon*, 468 U.S. 897 (1984), because Agent Peterson's affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (internal quotation marks and citation omitted). I respectfully disagree. The warrant here must stand or fall on the veracity of the confidential informant, and neither the bare bones assertions of the informant's reliability in paragraph 5 of the agent's affidavit nor the corroboration provided in paragraphs 3, 4, and 6 come close to establishing the informant's veracity. As a result, I would affirm the district court's order suppressing the evidence from the May 25 search because Agent Peterson should have "known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. Indeed, a reasonably well-trained officer would never have submitted Agent Peterson's affidavit to the magistrate judge in the first place. *See Malley v. Briggs*, 475 U.S. 335, 345, 346 n.9 (1986). Because I think Agent Peterson's affidavit was too insubstantial to merit application of the good faith exception, I must also discuss an alternative argument advanced by the government. According to the government, the exception applies in this case because Agent Peterson knew, but did not tell the magistrate, that his confidential source was the same informant referred to in another officer's affidavit that had supported a warrant for an earlier search of the same apartment on February 10, 2000. I conclude that what Agent Peterson knew but failed to tell the magistrate is irrelevant to Peterson's good faith because *Leon* requires an officer to have an objectively reasonable belief that his affidavit gave *the magistrate* a substantial basis for finding probable cause. Whether this belief is reasonable can depend only on the facts presented to the magistrate.

I.

In deciding whether Agent Peterson's affidavit was so lacking in indicia of probable cause that no reasonable officer would have submitted it to a magistrate, we must view the affidavit in the light of the totality-of-the-circumstances test for probable cause established by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). Under *Gates* "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set

forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. The task of a reviewing court is to "ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238-39 (internal quotation marks, ellipsis, and citation omitted). Although *Gates* abandoned the two-pronged test set forth in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969), it was not a repudiation of all that had gone before. Specifically, the *Gates* Court continued to insist that a magistrate's probable cause determination must be based on evidence that is both substantial *and independent*. "Sufficient information must be presented to the magistrate to allow *that official* to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239 (emphasis added). When an affidavit fails to provide the magistrate with a substantial and independent basis for concluding that probable cause exists, any warrant issued on the basis of that affidavit cannot be relied upon in good faith.

Paragraph 7 of Agent Peterson's affidavit, *ante* at 4, states that the confidential informant had been inside Bynum's apartment at 2234 Walcott Place within the last 72 hours and had observed Bynum preparing "a large quantity of heroin" for distribution. If credible, this information shows that the informant had a sufficient basis of knowledge to establish probable cause for the May 25 search. Conversely, if the information in paragraph 7 is not credible, the affidavit falls so far short of establishing probable cause that no reasonable officer would have submitted it to a magistrate. Thus, the critical question in this case is whether an objectively reasonable officer would have believed that Agent Peterson's affidavit provided the magistrate with a substantial and independent basis for concluding that the confidential informant was credible. The government argues that the credibility of the informant in Agent Peterson's affidavit is supported by (a) the agent's claims about the informant's reliability in paragraph 5 and (b) the corroboration of the informant's tip in paragraphs 3, 4, and 6. Neither provided the magistrate with a substantial and independent

basis for crediting the informant's claims that are reported in paragraph 7.[1]

### A.

The first sentence in paragraph 5 attempts to establish the confidential informant's veracity by pointing to his track record. It states:

> Information and intelligence provided in this investigation by a Confidential Source (CS) has been proven reliable and information provided to law enforcement has been verified.

---

[1] I deal briefly with one point raised by the majority that was not pressed by the government. The majority suggests that even though Agent Peterson failed to "expressly inform the magistrate judge that the confidential source was the same source who provided information for the February 10 search," *ante* at 6-7, Peterson reasonably relied on the search warrant in part because the magistrate "could reasonably have inferred a link between the confidential source [referred to in paragraphs 5 and 7 of Agent Peterson's affidavit] and the February search [described in paragraph 6 of the affidavit]," *id.* I agree with the majority that the good faith exception would apply in this case *if* the affidavit fairly implied that the informant mentioned in paragraphs 5 and 7 provided the information that supported the warrant for the February 10 search. I cannot agree, however, that a magistrate could reasonably draw the inference suggested by the majority. Because the link between Agent Peterson's confidential informant and the February 10 search would provide such powerful evidence of the informant's veracity, a reasonable magistrate would expect the affidavit to set out this information explicitly. See *United States v. Bynum*, 125 F.Supp.2d 772, 793 (E.D. Va. 2000) (stating that the absence of any linkage in the affidavit between the confidential source and the February 10 search was significant because the affiant would have "provided this obvious indicia of the informant's reliability and veracity, if it existed"). Paragraphs 5 and 7 of Agent Peterson's affidavit do refer explicitly to information provided by the informant, *see ante* at 3-4, but paragraph 6 (dealing with the February 10 search) says nothing about the informant or about how the earlier search warrant was obtained. Under these circumstances, the only reasonable inference for a magistrate to draw would be that Agent Peterson's informant had nothing to do with the February 10 search.

The bar for establishing an informant's veracity through references to his track record is not high. For example, courts have uniformly held that an informant's veracity is adequately established when the affiant asserts that the informant has supplied information leading to arrests and convictions. *See, e.g.*, *United States v. King*, 227 F.3d 732, 742 (6th Cir. 2000); *United States v. Shepherd*, 714 F.2d 316, 317 (4th Cir. 1983). At the opposite end of the spectrum, it is equally clear that a bare bones, conclusory assertion that the informant is credible or his information reliable is not sufficient because it "gives the magistrate virtually no basis at all for making a judgment regarding probable cause." *Gates*, 462 U.S. at 239. We held in *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996), that *Leon*'s good faith exception does not apply when a warrant is issued on the basis of a bare bones affidavit. *Id.* at 121. Here, Agent Peterson's affidavit says only that the informant had provided information that had proven reliable and had been verified. It does not say whether the information led to arrests or convictions, how important the information was in prior investigations, or whether the information pertained to the same sorts of crimes. In short, Agent Peterson's characterization of the informant as having provided reliable and verified information is unacceptably conclusory because it still "'leaves the nature of [the informant's past] performance undisclosed, so that the judicial officer making the probable cause determination has no basis for judging whether the [affiant's] characterization of [the informant's past] performance is justified.'" *United States v. Foree*, 43 F.3d 1572, 1576 (11th Cir. 1995) (quoting 1 Wayne R. LaFave, *Search and Seizure* § 3.3(b) at 636 (2d ed. 1987)). Many courts have properly held that a bare assertion that an informant has provided reliable information in the past carries little or no weight in the probable cause determination. *See, e.g.*, *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999) (holding that an affidavit stating that the affiants "ha[d] received reliable information from a credible person" was so conclusory that the tip would be treated as though it had been "obtained from an informant of 'unknown reliability'"); *Foree*, 43 F.3d at 1575-76 (holding that an affidavit stating that "[i]nformation previously provided by the [confidential informant] ha[d] been corroborated by the affiant" and that the informant "ha[d] been found to be truthful and accurate in other narcotics trafficking intelligence" was entitled to only "slight weight"). The same reasoning should apply here. Agent Peterson's conclusory assertion that the informant had provided reliable and verified infor-

mation should count for nothing (or next to nothing) in the probable cause calculus. Any other conclusion ignores the requirement that the inferences from the facts supporting probable cause should be drawn not by the officer or the confidential informant, but by a "neutral and detached magistrate." *Aguilar*, 378 U.S. at 115 (internal quotation marks and citation omitted).

This point is not undercut by the majority's statement that, under applicable Supreme Court precedent, "a proven, reliable informant is entitled to far more credence than an unknown, anonymous tipster." *Ante* at 8. I agree that *an officer* will often have better reason to trust an informant he knows than an anonymous voice on the other end of a telephone line. The cases cited by the majority, however, do not speak to the question of whether *a magistrate* must treat a known confidential informant whose veracity is supported only by bare bones assertions as more credible than an anonymous informant. Neither *Florida v. J.L.*, 529 U.S. 266, 269-70 (2000), nor *Adams v. Williams*, 407 U.S. 143, 146-47 (1972), has any real bearing on this question because both of these cases dealt only with the distinct question of whether an informant's tip established the reasonable suspicion required for a police officer to make a *Terry* stop. When, as in this case, the veracity of a known confidential informant is supported only by the affiant's conclusory assertions, the magistrate can give "far more credence" to a known informant's tip than to an anonymous tip only by improperly relying on the affiant's judgments about the informant's reliability rather than by making an independent evaluation. In short, the difference between a "proven, reliable informant" and an "unknown, anonymous tipster" is only significant *from the magistrate's perspective* when the affiant informs the magistrate of his grounds for believing the known informant to be reliable. That did not happen here.

Agent Peterson's assertion in paragraph 5 that his informant had provided reliable and verified information in the past is a bare conclusion that should have been given little or no weight by the magistrate. No reasonable officer would have thought this assertion provided the magistrate with a substantial and independent basis for crediting the informant's tip. Consequently, Agent Peterson could rely on the May 25 warrant in good faith only if he could reasonably believe that his

affidavit's corroborating evidence provided the magistrate with a substantial basis for concluding that the informant was truthful.

B.

The corroborating information in Agent Peterson's affidavit appears in paragraphs 3, 4, and 6. *Ante* at 3-4. Together, these paragraphs suggest that Bynum had been convicted of an unspecified felony and that he had been dealing significant quantities of heroin from his apartment at 2234 Walcott Place as recently as three and one-half months before Agent Peterson submitted his application for the May 25 search warrant. Whether this degree of corroboration is enough to merit application of the good faith exception is the hardest question in this case. The case law appears to recognize at least two different ways in which corroborating evidence can help to establish an informant's veracity. As I will explain below, a first method (discussed in the Supreme Court's cases on the corroboration of informants' tips) allows police officers to establish an informant's veracity by confirming the truth of a portion of the informant's tip. Courts also appear to recognize a second method of corroboration. Under this method, any evidence known to the police that tends to establish probable cause also tends to establish the truthfulness of the informant's tip. In my opinion, the corroborating evidence in Agent Peterson's affidavit does not adequately support the informant's veracity in either of these ways. As a result, I would hold that *Leon* does not apply on these facts because no reasonable officer would have thought that the corroborating evidence in paragraphs 3, 4, and 6 provided the magistrate with a substantial basis for crediting the veracity of the tip.

The Supreme Court has explained that partial corroboration of a tip helps to establish an informant's veracity because if "an informant is right about some things, he is more probably right about other facts." *Gates*, 462 U.S. at 244 (quoting *Spinelli*, 393 U.S. at 427 (White, J., concurring)). In other words, the theory is that when police can verify that an informant has spoken truthfully about one thing, they can (in some circumstances) reasonably infer that the informant has also spoken truthfully in his unverified allegations of criminal activity. Here, the only information from the informant that the police were able to corroborate prior to the May 25 search is the claim in paragraph 5 of the affidavit that the informant "ha[d] identified Bynum as a large

quantity dealer of heroin." This claim is substantially corroborated by the evidence in paragraphs 3, 4, and (especially) 6. The question under *Leon* is whether a reasonable officer would have believed that the informant's truthfulness in claiming that Bynum was a large quantity heroin dealer provided the magistrate with a substantial basis for crediting the informant's further claims, set out in paragraph 7, that he had been inside Bynum's apartment within the last 72 hours and had observed Bynum preparing heroin for distribution.

Answering this question requires some standard for deciding when an informant's truthfulness about one fact makes it reasonable to assume that he has also been truthful about other facts. The Supreme Court's cases on corroboration indicate that confirmation of the informant's truthfulness about just any set of facts will not do. Instead, the Court has asked whether the informant's knowledge of the facts verified by the police indicates that he was also in a position to know about the criminal activity allegedly being carried out by the subject of the tip. In *Florida v. J.L.*, for example, an anonymous caller told police that a young black male wearing a plaid shirt at a certain bus stop was carrying a gun. The police went to the bus stop and saw a young black male who was wearing a plaid shirt; one policeman frisked the young man after ordering him to put his hands up on the bus stop. *J.L.*, 529 U.S. at 268. The Court held that the tipster's truthfulness about the suspect's physical appearance and location did not establish the reasonable suspicion required for a *Terry* stop because "it [did] not show that the tipster ha[d] knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 272. In *Alabama v. White*, 496 U.S. 325 (1990), police received an anonymous tip that a woman would be leaving a particular apartment at a particular time in a brown Plymouth station wagon and that she would be going to a motel carrying an ounce of cocaine in a brown attache case. *Id.* at 327. The police went to the apartment building, saw a car matching the caller's description, watched a woman as she left the building and entered the car, and followed her on the route to the motel, stopping the car just short of the motel. *Id.* The Court upheld the stop, emphasizing that the police stopped the car only after verifying "significant aspects" of the informant's tip. *Id.* at 332. In explaining the value of police corroboration of the tip, the Court distinguished between "'easily obtained

facts and conditions existing at the time of the tip'" and "'future actions of third parties ordinarily not easily predicted.'" *Id.* (quoting *Gates*, 462 U.S. at 245). It said that the tip's predictions of future actions were more important in establishing the credibility of the tip because they "demonstrated *inside information* — a special familiarity with [the defendant's] affairs. . . . Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Id.* (emphasis added). We used similar reasoning in *Wilhelm*. There, the government sought to establish the veracity of an anonymous informant by arguing that the police had verified the informant's directions to the defendant's house and that the informant's descriptions of marijuana transactions were consistent with police knowledge of how marijuana is packaged and sold. We found this corroboration insufficient to establish the informant's veracity because "[a]lmost anyone can give directions to a particular house without knowing anything of substance about what goes on inside that house, and anyone who occasionally watches the evening news can make generalizations about what marijuana looks like and how it is packaged and sold." *Wilhelm*, 80 F.3d at 121. In short, we reasoned that the corroboration was inadequate because it did not show that the informant was in a position to know anything about the defendant's criminal activities. Thus, both *Wilhelm* and the Supreme Court's cases on corroboration suggest that partial corroboration of an informant's tip supports the reliability of the tip's unverified allegations of criminal activity to the extent that the corroboration shows that the informant has inside information about the subject of the tip.

Under this analysis the proper question to ask about Agent Peterson's affidavit is whether the fact that the informant correctly identified Bynum as a heroin dealer makes it reasonable to credit his claims, set out in paragraph 7 of the agent's affidavit, that he (the informant) had been inside Bynum's apartment and that he had personally observed Bynum preparing heroin for distribution. I submit that it does not. A person could easily know Bynum's general reputation as a heroin dealer without having the sort of relationship with Bynum that would make the person privy to the details of Bynum's drug trafficking activities. *Cf. Barber v. State*, 406 A.2d 668, 678 (Md. Ct. Spec. App. 1979) (finding police corroboration of infor-

mant's information regarding defendant's address, telephone number, and prior arrest for marijuana possession was inadequate because "many people circulating in the criminal underworld were in possession of all the information verified by the police officer"). In fact, the informant's knowledge of Bynum's reputation does not corroborate the unverified aspects of the informant's tip to any significant degree because it does not show that the informant had ever been inside Bynum's apartment or even that he knew Bynum personally. Accordingly, I conclude that the first method of corroboration does not help the government's case. A reasonable officer would not have thought the informant's knowledge that Bynum was a heroin dealer provided the magistrate with a substantial basis for crediting the informant's claims that he had personally observed Bynum preparing heroin for distribution.

This point, however, does not settle the corroboration issue because our cases appear to recognize a second method of corroboration distinct from that discussed in *Gates*, *White*, and *J.L.* For example, in *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993), we described a suspect's recent arrest for cocaine possession as corroborating evidence that buttressed the veracity of reports from two confidential informants even though neither informant had told police about the recent arrest. Because the suspect's recent arrest did not confirm the truth of anything the informants had told police, this aspect of *Lalor*'s reasoning cannot be based on the theory that an informant who knows certain facts is probably also right about other facts. We apparently reasoned in *Lalor* that information about the suspect's recent arrest for cocaine possession supported the veracity of the informants' claims that the suspect was dealing cocaine simply because it was consistent with those claims and made them more likely to be true. Under this second method of corroboration, any fact that tends to establish the existence of probable cause will also count as corroboration that supports the informant's veracity because it tends to make the truth of the informant's incriminating accusations more likely.[2] It is this second sense of corroboration that the majority

---

[2]It might be questioned whether this second method of corroboration is consistent with the reasoning of the Supreme Court cases on corroboration of informants' tips. Those cases explain that confirming one aspect

apparently relies upon in concluding that the corroboration in this case was far superior to that in *Wilhelm*. *See ante* at 8-9. In other words, the majority's argument is that the informant's claims in paragraph 7 that he had recently observed Bynum preparing heroin for distribution are directly corroborated by the facts that Bynum was a convicted felon and that he lived in an apartment from which police had seized significant evidence of heroin trafficking less than four months earlier. In short, the majority contends that a reasonable officer could have believed that the corroboration provided by Bynum's prior criminal history gave the magistrate a substantial basis for crediting the informant's tip. Although I acknowledge that the question is a close one, I disagree.

As the majority points out, *ante* at 9, courts have consistently observed that a suspect's prior criminal activity can help to corroborate an informant's tip. This is not surprising. As a matter of common

___

of an informant's tip helps to demonstrate that the informant was both "honest" and "well informed." *White*, 496 U.S. at 332. *See also* 2 LaFave, *supra*, § 3.3(f) at 167 ("'When independent police observations have verified part of the story told by an informant, that corroboration lends credence to the remaining unverified portion of the story by demonstrating that the informant has, to the extent tested, spoken truly. . . . Present good performance shows him to be probably 'credible' just as surely as does past good performance.'") (quoting *Stanley v. State*, 313 A.2d 847, 860-61 (Md. Ct. Spec. App. 1974)). In contrast, the theory of corroboration recognized in *Lalor* tells the magistrate nothing whatsoever about the honesty of the individual informant because *any* tip (even an anonymous phone call made to the police by a pathological liar) will be corroborated to the extent that the police have information that tends to establish probable cause. Nevertheless, the second method of corroboration is routinely employed by courts and seems justified because there is an obvious sense in which an informant's allegation of criminal activity is far more likely to be true when the police have other information independently suggesting that the subject of the tip is engaged in criminal activity. *Cf. United States v. Miller*, 925 F.2d 695, 699 (4th Cir. 1991) (emphasizing that neither Supreme Court nor Fourth Circuit precedents "create[ ] a requirement that police officers acting on an informant's tip must corroborate that tip in some specific way such as conducting an independent investigation").

sense, an informant's allegation that a convicted drug dealer is selling heroin sounds more credible than an allegation that a local choir director has become a crack dealer. Nevertheless, courts usually rely on a suspect's prior criminal history as only one among several factors supporting the reliability of the informant's tip. *See, e.g.*, *United States v. Burke*, 999 F.2d 596, 598-99 (1st Cir. 1993) (holding that an informant's tip was reliable based on informant's track record, prior seizure of marijuana plants at defendant's house, and police investigation confirming unusually high electricity consumption); *Lalor*, 996 F.2d at 1581 (holding that reliability of informants' tips was supported by police confirmation of details in the tips and by defendant's recent arrest for cocaine possession); *United States v. Miller*, 925 F.2d 695, 699-700 (4th Cir. 1991) (holding that a tip's reliability was supported by officer's corroboration of informant's predictions of defendant's future behavior as well as officer's knowledge of defendant's prior criminal activity).[3] What is unusual in this case is that the cor-

---

[3]A possible exception is *United States v. Taylor*, 985 F.2d 3, 6 (1st Cir. 1993), where the court held that an affidavit recounting an informant's first hand observation that the defendant was growing marijuana plants on her property was sufficient to establish probable cause. In *Taylor* the affidavit made only the conclusory assertion that the informant "ha[d] provided reliable information . . . in the past," *id.* at 5, and the tip was corroborated mainly by evidence in police records that, nearly five years earlier, the defendant had admitted to cultivating marijuana on the same property and had pled guilty to two counts of marijuana trafficking, *id.* at 6. The *Taylor* court also emphasized, however, that the magistrate was entitled to rely on the affiant's judgment that the informant had accurately described what a marijuana growing operation looks like. *Id.* Thus, even *Taylor* did not rely solely on past criminal activity to corroborate the informant's tip. Nevertheless, I acknowledge that *Taylor* offers strong support for the majority's position because it finds an adequate basis for probable cause in an affidavit that is arguably weaker than Agent Peterson's. We are not bound to follow *Taylor*, of course, and I believe that case was wrongly decided. Evidence of criminal activity nearly five years in the past should not count as sufficient corroboration to establish the truthfulness of a tip supported only by a bare, conclusory assertion of the informant's reliability. Nor should the informant's realistic description of a marijuana growing operation be enough to change the result. *Cf. Wilhelm*, 80 F.3d at 121 (observing that "anyone who occasionally watches the evening news can make generalizations about what marijuana looks like and how it is packaged and sold").

roboration is based *entirely* on Bynum's criminal past. The affidavit points to no evidence aside from the informant's tip suggesting that Bynum was presently dealing heroin from his apartment. As a result, this case asks us to decide whether it is reasonable to credit an informant's tip solely because the tip is consistent with prior criminal activity by the subject of the tip.

At least in the circumstances of this case, I believe that the implications of a positive answer are unacceptable. As I see it, the veracity of the informant in this case is supported solely by Agent Peterson's bare bones assertion of the informant's reliability and by the consistency of the tip with Bynum's prior criminal history. I have already explained that the bare bones assertions in paragraph 5 of the affidavit do not elevate the credibility of Agent Peterson's informant above that of an anonymous informant. *See supra* at 17-20; *Brack*, 188 F.3d at 755 (explaining that a tip from an informant whose veracity was supported only by conclusory assertions should be treated as though it had been obtained from "an informant of 'unknown reliability'"). It follows that if a reasonable officer could regard Agent Peterson's informant as truthful solely on the basis of the corroboration provided by Bynum's criminal history, a reasonable officer could also regard that criminal history as sufficient to establish the truthfulness of a completely anonymous tip. This would mean that once police have evidence that a person has previously engaged in criminal activity in his home, the police can (for at least the next three and one-half months) gain entry to his home whenever any anonymous informant is willing to claim that the person is up to his old tricks.[4] A reasonable officer could not believe that such a result can be squared with the Fourth Amendment. *Cf. United States v. Harris*, 403 U.S. 573, 596 (1971) (Harlan, J., dissenting) ("Surely, it cannot be seriously suggested that, once an individual has been convicted of bootlegging, any anonymous phone caller who states that he has just personally witnessed another illicit sale (up to four years later) by that individual provides federal agents with probable cause to search the suspect's

---

[4]I trust the majority would agree that there must be some point at which a suspect's prior criminal activity is simply too remote in time to justify an inference that an unproven informant's allegation of present criminal activity is trustworthy. Obviously, the majority does not believe that point has been reached in this case.

home."); *Parish v. State*, 939 S.W.2d 201, 204 (Tex. Ct. App. 1997) ("An anonymous tip, without the observation [by police] of any other activity indicating criminal conduct, does not provide probable cause to search the person's home or personal effects solely because that individual has a criminal record."); *State v. Mickle*, 765 P.2d 331, 334 (Wash. Ct. App. 1989) (holding that police knowledge that defendant had "grown marijuana in the past" was inadequate corroboration because "it verifie[d] only knowledge of the suspect and his past activities, not that criminal activity [was] presently occurring").

While I would not go so far as to say that the veracity of an untested informant's tip can *never* be corroborated solely by a suspect's criminal history, the circumstances in which police should be allowed to search a home on this basis should be rare. A contrary holding gives police no incentive to seek independent confirmation of an informant's claim that a suspect is currently engaged in criminal activity. At the very least, police should be able to rely solely on prior criminal history to establish the veracity of a confidential informant only when that criminal history is quite recent. Here, it would be unreasonable to contend that just because police found evidence of heroin trafficking in Bynum's apartment during a search on February 10, there was a fair probability that evidence of heroin trafficking would still be found there three and one-half months later. It is no more reasonable to contend that just because evidence of heroin trafficking was found in Bynum's apartment on February 10, an informant who accused Bynum of heroin trafficking three and one-half months later was probably telling the truth. I therefore conclude that Bynum's prior criminal history did not provide sufficient corroboration of the informant's veracity to make Agent Peterson's decision to submit his affidavit objectively reasonable.

In sum, the corroboration in paragraphs 3, 4, and 6 of Agent Peterson's affidavit was insufficient to merit application of the good faith exception on either theory of corroboration. The problem under the first theory is that even if the police could be said to have confirmed the informant's claim that Bynum was a large quantity heroin dealer, the informant's knowledge of that fact has little weight because it does not demonstrate that the informant was in a position to have the kind of inside information attributed to him in paragraph 7. The problem under the second theory is that, in circumstances like this case,

allowing a tip to be corroborated solely by evidence of a suspect's prior criminal activity will gut the protections of the Fourth Amendment for persons with criminal histories. "Once a crook, always a crook" may be an epigram that is useful at times, but it should not be given the place in our Fourth Amendment law that the majority accords it today.

## C.

For the foregoing reasons, I conclude that a reasonable officer would not have submitted Agent Peterson's affidavit to a magistrate because a reasonable officer would have recognized that the affidavit did not provide the magistrate with a substantial and independent basis for crediting the informant's claims reported in paragraph 7 of the affidavit. Consequently, Agent Peterson's affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and *Leon's* good faith exception should not apply. *Leon*, 468 U.S. at 923.

## II.

Because I disagree with the majority's conclusion that the information in Agent Peterson's affidavit was substantial enough to warrant application of the good faith exception, I must deal with a question that the majority did not have to reach: namely, whether an officer's good faith can be established on the basis of information known to the officer but never presented to a magistrate. Relying on *United States v. Weeks*, 160 F.3d 1210, 1212-13 (8th Cir. 1998), the government argues that even if Agent Peterson's affidavit was not substantial enough to pass muster under *Leon*, the good faith exception still applies because Agent Peterson knew, but inadvertently failed to tell the magistrate, that his confidential source was the same informant whose tip had supported the warrant for the earlier, February 10 search of Bynum's apartment.

It is important to set the government's position in context. Agent Peterson's actual affidavit said only that the confidential informant had provided reliable information that had been verified. If we credit the government's claims about what Agent Peterson knew but did not tell the magistrate, Agent Peterson's affidavit could have said, among

other things, that the informant had worked for the Richmond Police Department for eight years, that the informant's tips had led to multiple convictions in state and federal courts, and (most significantly) that the informant had supplied the tip that established probable cause for the earlier search of Bynum's apartment. *See United States v. Bynum*, 125 F.Supp.2d 772, 786 (E.D. Va. 2000) (recounting information in the affidavit supporting the warrant for the February 10 search). If all of this is true, the affidavit Agent Peterson could have submitted to the magistrate would have established probable cause; but I do not see how Agent Peterson's failure to inform the magistrate of his basis for trusting his informant helps to establish the agent's good faith. Indeed, when the gap between what an officer knew and what he told the magistrate is so pronounced, it is hard to believe that the officer inadvertently omitted information about the informant's reliability in the way that a person might forget to put eggs on his grocery list. There are, in my opinion, only two plausible explanations for Agent Peterson's decision to tell the magistrate so little about the informant's reliability when the agent allegedly could have said so much. The first (and perhaps the more likely) possibility is that Agent Peterson omitted all the facts supporting the informant's veracity because he expected the magistrate simply to ratify his bare conclusion that the informant was reliable. The second is that Agent Peterson did not know the facts the government now claims he knew. Neither possibility supports the government's argument that Agent Peterson displayed the objective good faith required by *Leon*.

As the majority observes, *ante* at 11, courts have split on the difficult question of whether information known to an officer but never presented to a magistrate can be used to establish the officer's good faith. The government urges us to hold that it can, but I think the Supreme Court's explanations of the good faith exception in *Leon* and *Malley* show that the government is wrong. The problem with the government's position stems from its basic premise that objective good faith is determined by the reasonableness of the *officer's* belief in the existence of probable cause. An officer's reasonable belief that he has probable cause for a search may be a necessary condition of objective good faith, but it is not a sufficient condition. *Leon* also requires courts to ask whether the officer had an objectively reasonable belief that his affidavit gave the *magistrate* a substantial basis for finding probable cause. The point is underscored by *Leon*'s language

describing the third circumstance that bars application of the good faith exception: "Nor would an officer manifest objective good faith in relying on a warrant based on *an affidavit so lacking in indicia of probable cause* as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (emphasis added) (internal quotation marks and citation omitted). *See also Malley*, 475 U.S. at 345 (stating that courts should determine the objective reasonableness of an officer's reliance on a warrant by asking "whether a reasonably well-trained officer . . . would have known that *his affidavit* failed to establish probable cause" (emphasis added)). I do not understand how information known to the affiant but not presented to the magistrate can be used to decide whether an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon* and *Malley*'s emphasis on the officer's affidavit suggests that an officer has a duty to ask not only whether he knows enough to establish probable cause, but also whether he has given the magistrate at least a substantial basis for finding probable cause.

The same point is implied by *Leon*'s general principle that the exclusionary rule should apply when "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. Under *Gates*, whether a search is illegal depends on whether "the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238 (internal quotation marks, ellipsis, and citation omitted). Thus, an officer displays objective good faith only when he has a reasonable belief that the magistrate had a substantial basis for finding probable cause. Because the reasonableness of the magistrate's probable cause determination is solely a function of the information presented to the magistrate, *see Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971), information not presented to the magistrate cannot be relevant to the question "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. Here, Agent Peterson's alleged knowledge about the identity of the informant could not support an objectively reasonable belief that the magistrate had a substantial and independent basis for concluding that there was probable cause for the May 25 search of Bynum's apartment. It follows that the facts allegedly known to Agent Peterson but omitted from his affidavit are irrelevant to the good faith analysis.

The government's reading of *Leon*'s third disqualifying circumstance as covering only cases where the officer lacked an objectively reasonable belief in the existence of probable cause significantly reduces the scope of the third circumstance. In essence, the government suggests that a bare bones affidavit is only bad if the affiant had no objectively reasonable basis for his conclusory assertions. This cannot be correct. The first problem with a bare bones affidavit is not that the affiant's claims of probable cause might be unfounded, but that the conclusory character of those claims prevents the magistrate from properly performing his constitutional role. *See, e.g.*, *Gates*, 462 U.S. at 239 (suggesting that the problem with bare bones affidavits is that they "give[ ] the magistrate virtually no basis at all for making a judgment regarding probable cause"); *United States v. Barrington*, 806 F.2d 529, 532 (5th Cir. 1986) (explaining that an officer could not reasonably rely on a bare bones affidavit because "he had no good faith reason to believe the magistrate had made a probable cause determination"). The government fails to recognize that an officer's decision to submit a bare bones affidavit is objectively unreasonable simply because it asks the magistrate to ratify the officer's bare conclusions. Regardless of the officer's grounds for judging the informant to be truthful, the decision not to share those grounds with the magistrate should not be protected by the good faith exception because it is not "objectively reasonable law enforcement activity." *Wilhelm*, 80 F.3d at 123 (internal quotation marks omitted).

In sum, the government cannot establish an officer's objective good faith under *Leon* by producing evidence of facts known to the officer but not disclosed to the magistrate. This is because *Leon* requires that the officer be able to entertain a reasonable belief that the magistrate had a substantial basis for finding probable cause. Whether that belief is reasonable can depend only upon the facts presented to the magistrate. Thus, even in the most benign of circumstances (for example, when an officer has inadvertently omitted from his affidavit a crucial detail that would have established the relationship between the suspected criminal activity and the place to be searched), what the officer knew but did not tell the magistrate is irrelevant. *See People v. Deitchman*, 695 P.2d 1146, 1166 (Colo. 1985) (Quinn, J., concurring) (explaining that to admit evidence on the ground that the affiant had inadvertently omitted from his affidavit evidence that the defendant lived at the address to be searched would

substitute "subjective good faith" for *Leon*'s objective good faith stan-
dard). Here, the circumstances are less than benign. If Agent Peterson
actually knew all the facts supporting the informant's reliability that
the government claims he knew, his failure to include any of these
facts in his affidavit signals a disturbing level of confidence that the
magistrate would approve anything that was put in front of him. It is
difficult to believe that any officer who understood the warrant pro-
cess to require independent testing of evidence by a neutral and
detached judicial officer would simply forget to include this kind of
information. Accordingly, I would hold that Agent Peterson's alleged
knowledge about the identity of the informant cannot be used to put
flesh on his bare bones affidavit.

III.

In dissenting from *Leon* nearly twenty years ago, Justice Brennan
predicted that the long run effect of that decision would be "to under-
mine the integrity of the warrant process." *Leon*, 468 U.S. at 958
(Brennan, J., dissenting). The facts of this case suggest that Justice
Brennan's fears were well founded. If the government's unverified
claims about the identity of Agent Peterson's confidential informant
are true, the agent could have submitted an affidavit that would have
conclusively established probable cause for the search of Bynum's
apartment under even the most exacting standards. Instead, he submit-
ted an affidavit containing only bare bones, conclusory assertions of
the informant's reliability. Agent Peterson also failed to provide the
magistrate with any corroborating evidence that could establish the
informant's reliability as a source of information about Bynum's
criminal activities. That Agent Peterson thought his affidavit worthy
of submission to a magistrate suggests that he viewed the warrant pro-
cess as no more than a mere formality. That a warrant was issued on
the basis of the affidavit suggests, unfortunately, that he may have
been right. That the evidence seized under that invalid warrant will
now be used against the defendants under *Leon* tells police officers
in no uncertain terms that "if they can secure a warrant . . . all police
conduct pursuant to that warrant will be protected from further judi-
cial review." *Id.* at 957 (Brennan, J., dissenting). I respectfully dis-
sent.