**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Susan Beth GILLENWATERS,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark Roger RAMEY,
Defendant–Appellant.**

**89–5040, 89–5041.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 6, 1989.

Decided Nov. 29, 1989.

Thomas Joseph Touhey, Jr., Charles Martin Carlson, II, for defendants-appellants.

Harvey Ellis Eisenberg, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., on brief) for plaintiff-appellee.

Before SPROUSE and WILKINS, Circuit Judges, and BRITT, District Judge for the Eastern District of North Carolina, sitting by designation.

SPROUSE, Circuit Judge:

Appellants Gillenwaters and Ramey here challenge the admission into evidence of narcotics and guns seized from their home pursuant to a search warrant. They contend the warrant was defective because the warrant affidavit was tainted by information obtained during an illegal search. The district court concluded that, although the affidavit contained tainted information, it still supported a finding of probable cause once the tainted material had been excised. We agree, and therefore affirm the conviction of the appellants.

I

An unusual chain of events led to the arrests of Susan Beth Gillenwaters and Mark Roger Ramey. On March 13, 1986, police responded to a report of a stabbing at their home. A visiting friend was the victim; they were not present. Officer Brian Hager arrived while paramedics were still tending the woman's wounds. He briefly questioned her. He also observed a glass dish with a tightly rolled dollar bill, a plastic straw cut to four or five inches in length, a "roach" clip, and a leather "Iron Riders" motorcycle club jacket adorned with captain's bars in the living room/dining room area where the victim lay. After she was taken to the hospital, Officer Hager remained in the house to await the arrival of crime scene technicians and the residents. When Gillenwaters returned home, Hager suggested she check to make sure nothing had been taken, and followed her as she went through the house. He observed a gun cabinet in a bedroom, other handguns, a mirror and razor blade, a small pipe with ash residue, and some plastic bags in a jewelry box. No valuables were missing, and Hager left the house.

Hager contacted Narcotics Detective George Hein, whose notes from the conversation indicated that there were "massive guns" in the residence. The district court found that Hager could not have supplied this information if he and other officers had remained in the living room/dining room crime scene prior to Gillenwaters' return.

Police subsequently decided to search the house. Detective Hein prepared an affida-

vit, relying largely on Hager's observations. Another police officer supplied information concerning the reputation of the Iron Riders for lawlessness and records of telephone calls from the cycle club headquarters to the Gillenwaters/Ramey home. The affidavit also stated that the stabbing suspect told police that he had gone to the house to buy drugs.[1] Based on this affidavit, a search warrant was issued and later executed. Police seized the motorcycle jacket, weapons, cash, a scale, and a locked concealed safe that was later found to contain 458 grams of methamphetamine.

Gillenwaters and Ramey were arrested and charged in state court with possession of a controlled dangerous substance and possession with intent to distribute, in violation of Md.Ann.Code art. 27, §§ 286, 287. However, the prosecution was dismissed after the court granted the appellants' motion to suppress the seized evidence. Gillenwaters and Ramey were subsequently indicted on federal charges of conspiracy to possess controlled dangerous substances and possession with intent to distribute, both violations of 21 U.S.C. § 841(a)(1). The district court initially indicated it too would grant a suppression motion, but later reversed itself and denied the motion. Gillenwaters and Ramey were convicted after a bench trial.[2] They appeal, challenging district court holdings that (1) the tainted evidence could be excised from the affidavit; (2) the material remaining in the affidavit supported probable cause for the search warrant; and (3) Officer Hager's initial view of the premises was justified by exigent circumstances. We affirm.

## II

In *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978), the Supreme Court addressed the constitutionality of a search warrant supported by an affidavit of questionable veracity. The Court explained that the correct course was to set aside the suspect material and make a probable cause evaluation based on what remained of the affidavit.[3] The First Circuit has observed that this approach is also appropriate when a warrant is based in part on information obtained through an illegal search:

> Knowingly including a false statement in a warrant affidavit seems the functional equivalent of (if not an even more serious transgression than) including in the affidavit knowledge of facts illegally obtained. Logically, then, the [evidence] that [was] improperly included in the warrant affidavit here should be dealt with in a similar fashion, i.e., [it] should be set to one side (as the district court did) and the remaining content of the affidavit examined to determine whether there was probable cause to search, apart from the tainted averments.

*United States v. Veillette*, 778 F.2d 899, 904 (1st Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). In *United States v. Whitehorn*, 813 F.2d 646, 649 & n. 3 (4th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 2898, 101 L.Ed.2d 931 (1988), where a warrant affidavit contained information obtained in an illegal search, we explained that "the inclusion of this 'tainted' data d[id] not invalidate the warrant" when the affidavit's other averments set forth probable cause. Similarly, in *United States v. Hawkins*, 788 F.2d 200, 203–04 (4th Cir.), *cert. denied*, 479 U.S. 850, 107 S.Ct. 176, 93 L.Ed.2d 112 (1986), where information produced by a challenged wiretap was included in a warrant

---

**1.** The suspect had been apprehended within minutes of the stabbing.

**2.** Gillenwaters was sentenced to 18 months imprisonment, with all but six months suspended provided she served her time in a jail-type or treatment institution, on work release. She was also sentenced to five years probation. Ramey was sentenced to 18 months imprisonment and 40 months probation. Both appellants were released pending the outcome of this appeal.

**3.** This is essentially an extrapolation from the Court's holding in *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963), that the exclusionary rule does not apply to evidence traceable to an independent and lawful source. Evidence should be excluded only when the illegality is "at least the 'but for' cause of the discovery of the evidence." *Segura v. United States*, 468 U.S. 796, 815, 104 S.Ct. 3380, 3391, 82 L.Ed.2d 599 (1984).

affidavit, we concluded that the trial judge acted properly in deleting the wiretap information from the affidavit and making a probable cause determination.[4]

■ That is precisely the course pursued by the district court in the case at bar—it excised all information Hager might have obtained by conducting an unauthorized search of the house or observing Gillenwaters as she conducted her own search, at his behest, to make sure the assailant had not stolen anything. This was not error. Indeed, it comports with the Supreme Court's admonition that, "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied." *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 2535, 101 L.Ed.2d 472 (1988).

■ The appellants argue that the taint of the illegal search permeated the affidavit. They claim the averments remaining after excision of the tainted material were insufficient to support a finding of probable cause. But this is how the district court described the contents of the affidavit after redaction:

> [W]hat you are left with is a suspect who says he went there to buy drugs, an outlaw motorcycle gang membership and officership, established by the captain's bars, the activities of the outlaw gang with regard to their propensity to engage in illegal activity, and also the calls from there to the house of this particular individual are noted there; and there was also evidence seen in the living room of the roach clip and the other narcotics paraphernalia, which included the rolled-up dollar bill sitting in a glass dish, and

the roach clip, and the straw; and this would be enough, it seems to me, to establish that there was probable cause....

We agree with the district court's conclusion that the totality of the circumstances presented in the untainted portion of the affidavit supports a finding of probable cause to issue the search warrant. *See Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527, *reh'g denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983).

■ Finally, we find no merit in the contention that Officer Hager's observations of items in plain view in the living room/dining room constituted an improper warrantless search. Hager was responding to an emergency call; he arrived while the victim was still receiving emergency medical treatment on the scene; he attempted to obtain evidence from her concerning her assailant. His presence was unquestionably justified by exigent circumstances, and his observations—made in the room where the victim lay bleeding—fall within the scope of the plain view doctrine. *See Mincey v. Arizona*, 437 U.S. 385, 392–93, 98 S.Ct. 2408, 2413–14, 57 L.Ed.2d 290 (1978). *Compare Sallie v. North Carolina*, 587 F.2d 636, 641 (4th Cir.1978), *cert. denied*, 441 U.S. 911, 99 S.Ct. 2009, 60 L.Ed.2d 383 (1979), *with United States v. Dart*, 747 F.2d 263, 269–70 (4th Cir.1984), *and United States v. Presler*, 610 F.2d 1206, 1210–11 (4th Cir.1979). We therefore hold the district court did not err in considering Hager's initial observations in the living room/dining room in its determination that probable cause existed for issuance of the search warrant.

**4.** *See also United States v. Smith*, 730 F.2d 1052, 1056 (6th Cir.1984); *United States v. Williams*, 633 F.2d 742, 744–45 (8th Cir.1980); *James v. United States*, 418 F.2d 1150, 1151–52 (D.C.Cir. 1969); *cf. United States v. Alexander*, 761 F.2d 1294, 1299–1300 (9th Cir.1985).

The appellants contend several other circuit court opinions require a different outcome. But *United States v. Taheri*, 648 F.2d 598, 600–01 (9th Cir.1981), and *United States v. Nelson*, 459 F.2d 884, 888–89 (6th Cir.1972), turn on determinations that there was not sufficient legally-

obtained evidence to support a finding of probable cause. This was the reasoning which underpinned our decision in *United States v. Dart*, 747 F.2d 263, 270 (4th Cir.1984). *United States v. Langley*, 466 F.2d 27, 35 (6th Cir.1972), cited in *Dart*, does suggest a more stringent standard, but it predates *Franks* and other Sixth Circuit opinions that have followed the approach employed here. *See, e.g., Smith*, 730 F.2d at 1056; *United States v. Korman*, 614 F.2d 541, 547 (6th Cir.), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980).

In view of the above, the decision of the district court is affirmed.

AFFIRMED.