COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Petty and Powell
Argued at Richmond, Virginia


GEORGE LEON PHELPS, JR.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1310-08-3                      JUDGE CLEO E. POWELL
                                                         JULY 14, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                            J. Leyburn Mosby, Jr., Judge

            Jessica M. Bulos, Assistant Appellate Defender (Office of the
            Appellate Defender, on briefs), for appellant.

            Susan M. Harris, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        George Leon Phelps, Jr. ("Phelps") appeals his conviction of possession of cocaine with

intent to distribute, in violation of Code § 18.2-248.  Phelps argues that the trial court erred in

denying his motion to suppress the evidence.  He also argues that the evidence was insufficient to

prove that Phelps was in possession of cocaine with the intent to distribute it.  For the reasons that

follow, we affirm the decision of the trial court.

                                          BACKGROUND

        On January 14, 2007, at approximately 8:03 p.m., Officer C.A. Dowdy was dispatched to

a residence located at 2310 Marsh Street in Lynchburg, Virginia.  A neighbor had reported that

he could smell the odor of burning marijuana emanating from the residence.  The neighbor also

reported that the front door of the residence was open and there were several people inside.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Officer Dowdy arrived at the residence within ten minutes of receiving the call. As Officer Dowdy approached the residence on foot, he confirmed that the front door was open and that there were several people inside the residence. He then received a call from another police officer, who reported that he (the other officer) had previously responded to a similar incident at the residence and that he was unsure about the presence of weapons. Based on this information, and his own personal knowledge that narcotics and weapons usually go together, Officer Dowdy called for a backup unit. He then ducked behind a large tree located to the left of the front door and waited for a backup unit to arrive.

As he waited for the backup unit to arrive, Officer Dowdy detected the odor of burning marijuana. Within a few minutes, Officer Scott Gillespie arrived on the scene. Upon Officer Gillespie's arrival, Officer Dowdy walked up the steps to the front door of the residence. At that point, Officer Dowdy was able to see that there were at least four individuals inside the residence. As he got closer to the front door, Officer Dowdy stated, "Hey guys, what's up?" Phelps and his brother, Quincy, looked up, and, upon seeing Officer Dowdy, immediately ran towards the back of the residence.

After seeing the two individuals run to the back of the house, out of his sight, Officer Dowdy drew his service revolver and entered the residence and followed after Phelps and Quincy. He crossed through the living room and stopped at the entranceway to the kitchen. At that point he heard the sound of water running.[1] Officer Dowdy then determined that the sound was coming from a bathroom in the direction that Phelps and Quincy had fled. He ordered

---

[1] In his initial police report, Officer Dowdy stated "I heard water running as if the toilet was flushed." At trial, defense counsel attempted to characterize the statement as Officer Dowdy hearing a toilet flush, however Officer Dowdy clarified that he heard running water as if the toilet was flushed, not the sound of an actual toilet flushing.

Phelps and Quincy out of the bathroom. Phelps and Quincy complied and returned to the living room.

Other police officers soon arrived on the scene, and Officer Dowdy had the other officers remain with the individuals at the residence while he went to get a search warrant. While Officer Dowdy was securing the warrant, the officers on the scene ensured that the individuals remained in sight at all times and that no one left the front porch or living room of the residence.

In the "Affidavit for Search Warrant," Officer Dowdy stated, in part,

> Upon arrival at the home I detected a strong odor of Marijuana coming from inside the house, and the front door was wide open. Two subjects upon seeing me ran into the bathroom in the rear of the house, and at that point I locked down the house to obtain a search warrant and detained those individuals.

After he secured the search warrant, Officer Dowdy returned to the residence and began to search the bathroom to which Phelps and Quincy had fled. In the sink drain Officer Dowdy found a piece of plastic tied in a knot which contained two chunks of an off-white substance. The plastic was wet at the time Officer Dowdy found it, as was the sink. Subsequent lab tests revealed that the chunks found in the sink were 5.53 grams of crack cocaine.

A search of the remainder of the residence revealed large pieces of plastic with the ends torn off and a partially smoked marijuana cigarette. Significantly, the search did not reveal any devices used to smoke crack cocaine.

Officer Dowdy then placed Phelps and Quincy under arrest. A subsequent search of Phelps revealed $545 in cash on his person. Again, no devices to smoke crack cocaine were found.

After advising him of his rights, Officer Dowdy asked Phelps if he had a job. Phelps replied that he worked odd jobs, but he didn't actually have a job at that time. Officer Dowdy

next asked Phelps if he smoked crack cocaine. Phelps replied that he did not smoke crack cocaine.

At trial, an expert on drug activity in Lynchburg, Captain Todd Swisher, testified that the size of the crack rocks was inconsistent with personal use. He explained that, due to the high potential for overdose, the typical user purchases crack cocaine in the form of .10, .25, or 1.0 gram rocks. Additionally, Captain Swisher noted that the absence of any smoking devices is a relevant factor in determining whether the crack cocaine was possessed for personal use or distribution. According to Captain Swisher, the absence of any smoking devices is inconsistent with personal use, as crack cocaine users would normally have access to at least one smoking device and usually more than one smoking device in their homes.

Phelps was subsequently found guilty of possession of cocaine with intent to distribute. Phelps appeals.

## ANALYSIS

### Motion to Suppress

Phelps contends that the trial court erred in denying his motion to suppress the evidence. Specifically, Phelps argues that Officer Dowdy's initial entry into the residence was an illegal entry which subsequently tainted any evidence recovered from the residence as fruit of the poisonous tree. Finding that the alleged illegal entry did not contribute to the eventual discovery of the crack cocaine in the bathroom sink, we must disagree.

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008). "In considering a claim of seizure, 'the appellate court is required to give deference to the factual findings of the trial court and to determine independently whether, under the law, the manner in which the evidence was

obtained satisfies constitutional requirements.'" Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002) (quoting McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001)). Furthermore, "the burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error." McCain, 261 Va. at 490, 545 S.E.2d at 545.

"The Fourth Amendment protects the people against unreasonable searches and seizures, but not those which are reasonable under the circumstances." Verez v. Commonwealth, 230 Va. 405, 410, 337 S.E.2d 749, 752 (1985). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton v. New York, 445 U.S. 573, 590 (1980). As such, warrantless entries and subsequent searches, seizures and arrests "are presumed to be unreasonable." Cherry v. Commonwealth, 44 Va. App. 347, 356, 605 S.E.2d 297, 301 (2004) (quoting Verez, 230 Va. at 410, 337 S.E.2d at 752-53); see also Welsh v. Wisconsin, 446 U.S. 740, 750 (1984).

It is well established the evidence obtained as the result of an illegal search or seizure must be excluded. Commonwealth v. Ealy, 12 Va. App. 744, 754, 407 S.E.2d 681, 688 (1991). "The question to be resolved when it is claimed that evidence subsequently obtained is 'tainted' or is 'fruit' of a prior illegality is whether the challenged evidence was 'come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Id. at 754-55, 407 S.E.2d at 688 (quoting Segura v. United States, 468 U.S. 796, 804-05 (1984)). Assuming *arguendo* that Officer Dowdy's warrantless entry was unlawful, an issue we need not decide today, we hold that the evidence obtained from the subsequent search was nevertheless admissible because it was not obtained by the exploitation of the allegedly unlawful entry.

The United States Supreme Court has stated that "evidence will not be excluded as 'fruit [of the poisonous tree]' unless the illegality is *at least* the 'but for' cause of the discovery of the evidence." Segura, 468 U.S. at 815 (emphasis added). Furthermore, "[s]uppression is not justified unless 'the challenged evidence is in some sense the product of illegal governmental activity.'" Id. (quoting United States v. Crews, 445 U.S. 463, 471 (1980)).

In the present case, it is clear from the record that no drugs were found when Officer Dowdy initially entered and secured the premises. Furthermore, nothing in the record indicates that Officer Dowdy suspected the presence of crack cocaine after the initial entry. In fact, there is nothing to indicate that Officer Dowdy's alleged illegal entry into the residence contributed in any way to the discovery of the crack cocaine in the sink. As a result, the threshold requirement that "but for" the illegal entry the drugs would not be discovered cannot be met in this case.

Phelps cites Murray v. United States, 487 U.S. 533 (1988), for the notion that the evidence was tainted because information obtained during the initial entry was presented to the magistrate and may have affected his decision to issue the warrant. However, once the information gained from the allegedly illegal entry (i.e., two subjects ran into the bathroom) is excised from the search warrant affidavit, the remaining, "untainted" portion of the affidavit (i.e., detected odor of marijuana) provides ample support for a finding of probable cause. See United States v. Walton, 56 F.3d 551, 554 (4th Cir. 1995) ("In assessing whether the [illegally-obtained] information affected the decision to issue the warrant," the search warrant affidavit must be examined "absent the illegally-obtained information, to determine whether the untainted portion of the affidavit set forth probable cause."); United States v. Gillenwaters, 890 F.2d 679, 681 (4th Cir. 1989) (the inclusion of tainted data did not invalidate a search warrant "when the affidavit's other averments set forth probable cause"); United States v. Whitehorn, 813 F.2d 646, 649 (4th Cir. 1987) (holding that the inclusion of information "tainted" by an illegal search did not

invalidate a search warrant where the untainted information established probable cause).

Accordingly, the trial court did not err in admitting the evidence.

Constructive Possession

Phelps next argues that the evidence was insufficient to prove that he possessed the cocaine found in the residence. "When examining a challenge to the sufficiency of the evidence, an appellate court must review the evidence in the light most favorable to the prevailing party at trial and consider any reasonable inferences from the facts proved." Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005). Furthermore, "when we consider the sufficiency of the evidence we do not consider each piece of evidence in isolation. Instead, we review the totality of the evidence to determine whether it was sufficient to prove an offense." Bowling v. Commonwealth, 51 Va. App. 102, 107, 654 S.E.2d 354, 356 (2007) (citing Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004)). "The judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is 'plainly wrong or without evidence to support it.'" Id. (quoting Code § 8.01-680). Thus, "[t]he issue upon appellate review is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

> To support a conviction based on constructive possession [of drugs], "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control."

Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)); see Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983).

Ownership or occupancy of . . . premises where illicit drugs are found is a circumstance that may be considered together with other evidence tending to prove that the owner or occupant exercised dominion and control over items in the vehicle or on the premises in order to prove that the owner or occupant constructively possessed the contraband . . . . Furthermore, proof that a person is in close proximity to contraband is a relevant fact that, depending on the circumstances, may tend to show that . . . the person necessarily knows of the presence, nature and character of a substance that is found there.

Burchette v. Commonwealth, 15 Va. App. 432, 435, 425 S.E.2d 81, 83 (1992) (citations omitted). Additionally, "possession of drugs, whether actual or constructive, need not be exclusive, but may instead be joint." Kelly v. Commonwealth, 41 Va. App. 250, 261, 584 S.E.2d 444, 449 (2003) (*en banc*).

Phelps relies heavily upon the well established principle that suspicious circumstances alone, such as being in close proximity to or residing at the location where drugs are found, are insufficient to support a conviction. See Behrens v. Commonwealth, 3 Va. App. 131, 135, 348 S.E.2d 430, 432 (1986). He argues that, at best, the evidence demonstrates that he was merely "seen in the same room where cocaine was later found hidden from common observation in a sink drain." We disagree.

Phelps' argument ignores the fact he admittedly lived in the residence, that, upon seeing Officer Dowdy at the entrance to the residence, Phelps and Quincy both fled into the very same bathroom where the cocaine was found, that the drugs were wrapped in plastic material similar to the cut up plastic bags found in one of the bedrooms, and that Officer Dowdy heard the sound of water running coming from the bathroom. Thus, when the totality of the evidence is viewed in the light most favorable to the Commonwealth, there is sufficient "evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [Phelps] was aware of both the presence and character of the substance and that it was subject to his dominion and control." Drew, 230 Va. at 473, 338 S.E.2d at 845.

<u>Intent to Distribute</u>

Phelps next contends that, even if the evidence was sufficient to prove that Phelps possessed the cocaine, the evidence failed to establish that he possessed the cocaine with the requisite intent to distribute.

It is well established that, "[w]here an offense consists of an act combined with a particular intent, proof of the intent is essential to the conviction." <u>Servis v. Commonwealth</u>, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). "Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence." <u>Id.</u> "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." <u>Coleman v. Commonwealth</u>, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). Only reasonable hypotheses of innocence that flow from the evidence need be excluded. <u>Hamilton v. Commonwealth</u>, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

> Factors that may indicate the defendant intended to distribute the illegal drugs in his possession include the possession of a quantity [of drugs] greater than that ordinarily possessed for one's personal use, the method of packaging of the controlled substance, the quantity and denomination of the cash possessed, the absence of any paraphernalia suggestive of personal use, the presence of equipment related to drug distribution, and the presence of firearms.

<u>Emerson v. Commonwealth</u>, 43 Va. App. 263, 278, 597 S.E.2d 242, 249 (2004) (internal citations omitted).

Here the evidence showed that Phelps possessed 5.53 grams of crack cocaine. He also had $545 in cash on his person, even though he was not regularly employed. Furthermore, Phelps stated that he did not smoke crack cocaine and no smoking devices were found in the house. The Commonwealth's narcotics expert, Captain Swisher, testified that the crack cocaine Phelps possessed had a street value of between $550 and $850 and that cocaine users typically

purchase only $20 to $40 worth of cocaine each time they buy it. He further testified that the amount of crack cocaine possessed was inconsistent with personal use, a fact further corroborated by the absence of smoking devices. Based on this evidence, the trial court could properly conclude from this evidence that Phelps intended to distribute the cocaine found in his possession.

## CONCLUSION

For the foregoing reasons, we affirm Phelps' conviction.

Affirmed.
