COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Russell
Argued by teleconference

**PUBLISHED**

COSHAUN TYRELL BRYANT

OPINION BY
v.      Record No. 0221-19-1          JUDGE RANDOLPH A. BEALES
JUNE 16, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Michael E. McGinty, Judge

Ronald L. Smith (Smith Law Firm, P.L.C., on brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


At the conclusion of a bench trial, appellant Coshaun Tyrell Bryant was found guilty of

possession of ammunition by a convicted felon and possession of more than five pounds of

marijuana with intent to distribute. Some of the evidence that was presented against him at trial

was found as a result of a search warrant. The affidavit used to obtain the search warrant relied

upon evidence found during a search that police conducted based upon consent by Bryant's

girlfriend, Jasmine Perry, who was the person who leased the apartment that the police were

searching. On appeal, Bryant argues that the trial court erred in denying a portion of his pretrial

motion to suppress the evidence.

I. BACKGROUND

In accordance with established principles of appellate review, we view the "evidence in the

light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial

court." Riner v. Commonwealth, 268 Va. 296, 330 (2004). "We also accord the Commonwealth

the benefit of all inferences fairly deducible from the evidence." Id. at 303. On appellate review of the denial of a motion to suppress, we consider not only the evidence presented at the pretrial hearing but also the evidence presented at trial. Commonwealth v. White, 293 Va. 411, 414 (2017).

On the evening of September 8, 2017, Officers John Heilman and Alfred Orozco of the Williamsburg Police Department arrived at Perry's apartment in response to a report of possible domestic violence and of someone barricaded in a room. The officers encountered Bryant outside of the apartment with his young daughter. Officer Heilman spoke with Bryant, while Officer Orozco went inside the apartment to conduct a protective sweep of the apartment and to speak with Perry. Perry informed the officers that her boyfriend had arrived at 2:00 a.m. and that "the argument that they got into that evening was bad enough where she just wanted to leave" to go to New York. The officers allowed Perry to take some of her packed belongings to her car.

Meanwhile, Officer Heilman asked Bryant for his identification. Bryant said he had a Virginia identification card but did not actually have it on him. Bryant identified himself to Officer Heilman as "Dion Carter" and provided a birthdate of January 1, 1986. Bryant said he did not know his social security number. Officer Heilman searched his computer for the identifying information Bryant provided but did not find a match. Officer Heilman asked Bryant to search through his belongings to find his ID. Bryant searched through packed luggage in the foyer of the apartment, but did not locate his ID. Officer Heilman then suggested that Bryant search the car for his ID; Bryant searched the car but stated that he still could not locate his ID.

Perry informed Officer Orozco that her boyfriend's date of birth was actually May 12. Based on that information and the fact that all of the identifying information he had provided to Officer Heilman appeared to be false because it did not match any individual's information in the

Virginia computer database,[1] the officers arrested Bryant for providing false identifying information to the police. The police conducted a search incident to the arrest and discovered on Bryant's person a flip phone, a smart phone, and $1,015 in cash. The police then placed Bryant in their police vehicle.

After Bryant's arrest, Officer Heilman then went to Perry, who was sitting in her car, and asked her who was renting the apartment. Perry informed him that she alone was renting it. Officer Heilman informed Perry that he was going to try to obtain a search warrant to search the apartment. However, Perry consented for the officers to go ahead and search the apartment.

Officer Heilman testified that he, Officer Orozco, and Perry then went up to the apartment. Heilman also testified that he first searched the kitchen area, then went to a "pile of bags that were in the foyer," which Perry stated belonged to her boyfriend. Heilman testified that in a black Nike duffle bag that was located in the foyer, he discovered a blue grocery bag that contained $14,020 in cash as well as "a yellow sticky pad that had various letters and numbers." Heilman stated that he believed the sticky pad "to be a drug ledger with the amount of money that was found." He also testified that inside the same black Nike bag, he found Beats headphones and a manicure set, both of which Perry identified as hers. He stated that he also searched a red varsity jacket that was located in the foyer, which contained "a pill bottle that was not labeled that had 66 pills inside of it, numerous different schedule types."

Officer Heilman also testified that Perry "made mention that she had other items inside of the apartment and pointed to one part of the room [that] had some items in them and then she pointed towards the hallway and -- but her speech trailed off and she didn't finish her sentence." The officer further testified that Perry told him that she still had shoes back in the master

---

[1] Based on Bryant's statements that he had spent time in New Jersey and New York, Officer Heilman also searched New York and New Jersey databases and found no match.

bedroom suite area of the apartment. Heilman stated that after he completed his search of the foyer, he went into one bedroom on the left side of the hallway, which he found to be completely empty. He then proceeded to the last door on the left in the hallway, which was the master bedroom that had a master bathroom and a walk-in closet off of it. He testified that he found a big travel suitcase on the floor of the bathroom and a safe placed upright on top of the toilet seat. Heilman stated that there were no identifying marks or name tags on the suitcase and that there was a gold Michael Jordan sticker on the safe. He also testified that he opened the suitcase and found fourteen clear vacuum-sealed bags containing "brown leafy green substances inside of them, later tested and found to be marijuana." Each vacuum-sealed bag weighed "roughly over one pound." Heilman told the trial court that he then went out to the family room where Officer Orozco and Perry were and asked Perry to identify the owner of the suitcase and safe. Perry stated they belonged to appellant.

Heilman stated that he seized the safe and took it to his police vehicle. After providing Bryant his Miranda rights (pursuant to Miranda v. Arizona, 384 U.S. 436 (1966)), Heilman questioned Bryant about the suitcase and the safe. He further testified that when Bryant was asked about the suitcase, he stated, "I'm not saying it's anybody's." The officer stated that Bryant admitted that the safe belonged to him and provided a combination for the safe's lock that Bryant claimed would "prove that there is nothing in there." The combination that Bryant provided, however, did not open the safe.

Officer Heilman filled out an affidavit for search warrant to search the safe. In Paragraph 4 of the affidavit, he wrote the following:

> Mr. Bryant was in possession of 14 - 1 lb bags of marijuana, schedule II drugs, schedule IV drugs, 3 cell phones, and over $1400 in cash. I also found what appears to be a piece of paper that looks like it contains money that Mr. Bryant owes or amounts of money that other people owe Mr. Bryant. The 14 bags of marijuana were located right next to the safe. With the amount of

contraband that lends probable cause to Mr. Bryant possessing marijuana with the intent to distribute it; I believe additional contraband could be found inside the safe. Mr. Bryant told me he owns the safe.

Officer Heilman stated that he ultimately obtained a warrant from the magistrate to search the safe. He also testified that when he searched the safe, he found 9 millimeter bullets and $7,000 in cash.

Bryant was indicted for possession of ammunition by a convicted felon in violation of Code § 18.2-308.2 and for possession of more than five pounds of marijuana with the intent to distribute in violation of Code § 18.2-248.1. Prior to trial, Bryant filed a motion to suppress all of the evidence seized during the search of Perry's apartment. After conducting a hearing, the trial court suppressed the items found from the search that took place in the foyer – namely the bag containing cash and "a yellow sticky pad" with numbers on it, as well as the pill container found in the jacket. It found that Perry's consent did not authorize the officers to search the items in the foyer because the officers knew – prior to conducting that search – that those particular items did not belong to her. When asked to whom those items belonged, Perry answered, "My boyfriend."[2]

However, the trial court denied the motion to suppress concerning the suitcase found in the master bathroom, finding that the search of the suitcase was appropriate, based on Perry's consent to search the apartment. The trial judge noted that it was not until "after that search of the purple suitcase, [that] the officer came out and went to ask the girlfriend who the suitcase belonged to and she said it was her boyfriend's." Finally, the trial court denied the motion to suppress regarding the contents of the safe. The trial judge stated, "Whatever was found in the

---

[2] The Commonwealth did not file a pretrial appeal assigning error to the trial court's suppressing the items found in the foyer, and the suppression of them is not before us in this appeal.

- 5 -

purple suitcase[,] will that be sufficient for probable cause to search the safe and looking at that and just applying that, given the amount of marijuana or what was found there in the purple suitcase, the Court will find that was sufficient to deny the motion to suppress whatever was found in the safe."

At the end of the bench trial, the trial judge found Bryant guilty of both charges and sentenced him to fifteen years of incarceration, with ten years and eleven months suspended.

On appeal, Bryant challenges the trial court's denial of his motion to suppress with respect to the evidence found as a result of the search of the suitcase and the subsequent search of the safe. He argues, "The trial court erred in denying Bryant's motion to suppress evidence because Perry did not have the authority to consent to a search of Bryant's property and the search warrant issued thereafter was based on unlawfully seized evidence."

## II. ANALYSIS

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that an appellate court must review de novo on appeal." Commonwealth v. Robertson, 275 Va. 559, 563 (2008). "In making such a determination, an appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Id. "The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth," as we must because the Commonwealth was the party that prevailed below in the trial court, the circuit court's denial of his suppression motion was reversible error. Id. at 564.

Some of the items which the trial court determined were found as a result of an improper search were listed on the affidavit that the police used to obtain a search warrant to search the

safe. When a search warrant is based partly on evidence obtained by an illegal search, it is proper for the appellate court to exclude the tainted part of the affidavit and then to determine whether the untainted portion of the affidavit (that was not obtained in violation of the Fourth Amendment) supports a finding of probable cause to issue a search warrant. See United States v. Gillenwaters, 890 F.2d 679, 681-82 (4th Cir. 1989) ("[T]he totality of the circumstances presented in the untainted portion of the affidavit supports a finding of probable cause to issue the search warrant."); Williams v. Commonwealth, 26 Va. App. 612, 619 (1998) ("[S]uppression is not required 'if, excluding the illegally obtained information, probable cause for the issuance of the [search] warrant could still be found.'" (quoting United States v. Apple, 915 F.2d 899, 910 (4th Cir. 1990))). As the contents of the suitcase (the fourteen bags of marijuana) were included in the affidavit to obtain the search warrant, we must first determine whether the search of the suitcase was permissible.

## A. The Search of the Suitcase

The Supreme Court of Virginia stated in Glenn v. Commonwealth, 275 Va. 123, 130 (2008) (citations omitted),

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures . . . are presumptively unreasonable. However, courts recognize exceptions to this general rule in several circumstances, including when a party voluntarily consents to the search. As in any Fourth Amendment review, the touchstone of our analysis is the reasonableness of the search under the circumstances.

The search of the suitcase was based on Perry's consent to search the apartment, as the person on the lease for the apartment. The Supreme Court has also stated:

> A third party has actual authority to consent to a search if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes. Even where actual authority is lacking, however, a third party has apparent

> authority to consent to a search when an officer reasonably, even if erroneously, believes the third party possesses authority to consent.
>
> Whether apparent authority exists is an objective, totality-of-the-circumstances inquiry into whether the facts available to the officers at the time they commenced the search would lead a reasonable officer to believe the third party had authority to consent to the search.

Id. at 132-33 (quoting United States v. Andrus, 483 F.3d 711, 716-17 (10th Cir. 2007)).  In Glenn, police officers went to arrest Glenn, pursuant to an arrest warrant, at the home of Glenn's grandparents, with whom Glenn lived.  Glenn answered the door and was immediately arrested and advised of his Miranda rights.  The officers then obtained permission from Glenn's grandfather, who owned the house, to search the house.  In one bedroom, where Glenn stated he slept, an officer found on the floor a closed backpack that bore "no outward indicia of ownership such as a nametag or a monogram and had no locking device."  Id. at 128.  The officer opened the backpack and discovered incriminating evidence against Glenn.  However, Glenn argued on appeal that "any conclusion by the police that [Glenn's grandfather] had the authority to consent to searching the backpack was objectively unreasonable as a matter of law."  Id. at 132.  The Supreme Court rejected Glenn's argument.  Noting that "[t]he backpack bore no indicia of ownership, evidenced no limitations on access, had no characteristics that reflected a use by reason of age or gender, and was located in a place open to all occupants of the house," the Supreme Court held that "it was objectively reasonable for the police officer to conclude [Glenn's grandfather's] consent to search included the authority to consent to a search of the backpack."  Id. at 133-34.

Bryant argues that the facts available to the officers at the time of the search of the apartment were not sufficient to lead an objectively reasonable officer to believe that Perry had the authority to consent to the search of the suitcase.  He argues that this case is distinguishable

from Glenn because, in this case, Perry, who gave consent to search the apartment, "was actually moving to New York and had her vehicle packed and ready to leave."

However, in Glenn, the Supreme Court rejected the "impossible burden" that would be placed on police officers were a rule to be adopted "that they could never search closed containers within a dwelling . . . without asking the person whose consent is being given ex ante about every item they might encounter." Id. at 135 (quoting United States v. Melgar, 227 F.3d 1038, 1042 (7th Cir. 2000)). Viewing the evidence in the light most favorable to the Commonwealth, as we must on appeal because the Commonwealth is the party that prevailed below in the trial court, it was objectively reasonable for an officer to conclude that Perry's consent included the authority to search the suitcase in her master bathroom. The evidence shows that Perry was the sole lessee of the apartment. Although Officer Heilman knew that Perry had moved some of her belongings to her car, he testified that Perry "made mention that she had other items inside of the apartment and pointed to one part of the room [that] had some items in them and then she pointed towards the hallway and -- but her speech trailed off and she didn't finish her sentence." On cross-examination, when asked if Perry stated that all her stuff was in the car, Heilman answered, "I don't recall if she said that. If it's on the body camera then clearly she did. I just don't recall hearing it."[3] Heilman also testified that Perry told him she had shoes in the master suite area, which is where the suitcase was found. The evidence also shows that Perry was not in the rooms with Officer Heilman that he searched after his search of the foyer so she was not with him when he searched the first bedroom, the master bedroom, and the master bathroom, where he came across and searched the purple suitcase. Heilman then went

---

[3] The officer's body camera video was never admitted into evidence at trial, and, consequently, of course, is not in the record before us on appeal.

back out to the family room, where Perry was, and asked her to whom the suitcase and safe belonged.

Under the totality of the circumstances, we hold that a reasonable officer could have concluded that Perry had actual or apparent authority to consent to the search of the suitcase. Like the backpack in <u>Glenn</u>, the suitcase had no identifying marks or name tags to give an officer reason to believe the suitcase was not Perry's suitcase. Based on Perry's statements and the fact that Perry was the sole lessee of the apartment, a police officer could reasonably have believed that Perry's shoes or other belongings were in the purple suitcase that was found in her bathroom and that the suitcase belonged to her. Consequently, the trial court did not err in denying Bryant's motion to suppress the suitcase and its contents from being admitted into evidence.

B. <u>The Search of the Safe Pursuant to a Search Warrant</u>[4]

The safe at issue (which was found in the same bathroom in which the suitcase was found) was searched pursuant to a search warrant. As noted *supra*, when a search warrant is based on an affidavit that contains information that was obtained in violation of the Fourth Amendment, we exclude the tainted part of the affidavit and determine whether the untainted portion of the affidavit (that was not obtained in violation of the Fourth Amendment) supports a finding of probable cause to issue a search warrant. <u>See</u> <u>Gillenwaters</u>, 890 F.2d at 681-82; <u>Williams</u>, 26 Va. App. at 619. Having concluded that the search of the suitcase that was found

---

[4] The Commonwealth argues, "To the extent Bryant argues that the trial court erred in finding the lawfully seized items were sufficient to establish probable cause to search the safe, the defendant did not present that argument to the trial court and it is also without merit." However, at the hearing on the motion to suppress, Bryant argued that all the items that were discovered by the police should be suppressed. Bryant's counsel also stated to the trial court, "And just for the record, Judge, I think the search warrant is based on the fruits of the poisonous tree what they found before that." Bryant's counsel also simply agreed with the trial court's statement that whatever items were legitimately found were not the fruit of the poisonous tree. Consequently, given the entire exchange between counsel and the trial judge, we disagree with the Commonwealth that Bryant did not adequately preserve this argument for consideration on appeal.

on the bathroom floor of the master suite was permissible due to Perry's actual or apparent authority to consent to the search, we hold that it was permissible for a magistrate to consider the contents of the suitcase (the fourteen bags of marijuana) when determining whether there was probable cause to issue a search warrant for the safe located next to the suitcase. Therefore, excluding the parts of the affidavit listing items which were later suppressed by the trial court, the information in the affidavit that would remain for consideration would be the fourteen bags of marijuana located "right next to the safe," the two cell phones, and approximately $1,000 in cash found on Bryant in the search incident to his arrest. With that information, a magistrate could certainly conclude that there was probable cause to authorize a search of the safe for evidence pertaining to the criminal activity of possession of marijuana with the intent to distribute. See, e.g., Brown v. Commonwealth, 68 Va. App. 517, 526-28 (2018) (holding that the appellant's attempt to purchase more than five pounds of marijuana and his possession of more than $5,000 in cash were enough for a magistrate to find probable cause to issue a search warrant for appellant's home). Consequently, the trial court did not err in denying Bryant's motion to suppress the ammunition and large amount of cash found in the safe from admission into evidence.[5]

### III. CONCLUSION

In short, a reasonable police officer could have concluded that Jasmine Perry had either actual or apparent authority to consent to a search of the suitcase found in the master bathroom of her apartment. Perry, who was the only person renting the apartment, told the officers that she had other items in the apartment, including shoes in the master suite area. There were no

---

[5] Because we find that the trial court did not err in denying the motion to suppress based on Perry's actual or apparent authority to consent to search the suitcase and the finding of probable cause to issue a search warrant for the safe, we do not reach the Commonwealth's arguments pertaining to the good faith exception to the exclusionary rule.

identifying marks or tags on the purple suitcase which would have given an officer reason to believe Perry did not have authority to consent to its search. In addition, when police officers have already obtained consent to search a dwelling, they are not required to seek confirmation of the ownership for every backpack, suitcase, or other closed container they come across during their search. See Glenn, 275 Va. at 135. See also Melgar, 227 F.3d at 1042. Consequently, the trial court did not err in denying Bryant's motion to suppress the evidence found during the search of the suitcase.

Furthermore, while some of the items listed in the affidavit for the search warrant were suppressed by the trial court (which suppression is not under review in this appeal), the remaining information in the affidavit is still certainly sufficient for a finding of probable cause of possession of marijuana with intent to distribute so as to properly authorize a search of the safe. The remaining information in the affidavit consisted of Bryant's possession of fourteen one-pound bags of marijuana inside of a suitcase which was found next to the safe – as well as two cell phones and a very large amount of cash found on Bryant during the search incident to his arrest. The trial court did not err in denying Bryant's motion to suppress the ammunition and other items found as a result of a search of the safe.

For all of these reasons, we affirm the judgment of the trial court and Bryant's convictions for possession of ammunition by a convicted felon and for possession of more than five pounds of marijuana with intent to distribute.

Affirmed.